UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY L. SANDUSKY,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:21-cv-1094

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including entry of an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed a previous application for DIB on October 4, 2013, alleging that he became disabled on August 19, 2011. After his application was denied, he requested a hearing before an Administrative Law Judge (ALJ). ALJ Donna J. Grit held a hearing on July 30, 2015, and issued

a written decision denying Plaintiff's claim for benefits on October 5, 2015 (the 2015 Decision). (PageID.114–31.) The Appeals Council denied Plaintiff's request for review on September 2, 2016. (PageID.136–39.) Plaintiff did not seek judicial review of the 2015 Decision.

Plaintiff filed an application for DIB on September 27, 2016, alleging that he had been disabled as of November 9, 2015, due to panic disorder with agoraphobia, major depressive disorder, generalized anxiety disorder, social anxiety disorder, and impaired intellectual functioning. (PageID.143, 264–65.) After his claim was denied, Plaintiff requested a hearing before an ALJ. On November 2, 2018, ALJ Grit held a hearing on the 2016 application. (PageID.861–82.) On December 31, 2018, ALJ Grit issued a written decision denying the 2016 application. (PageID.680.) The Appeals Council denied Plaintiff's request for review on October 9, 2019. (PageID.698–700.) Plaintiff sought judicial review in this Court, asserting that (1) ALJ Grit erred by adopting the previous RFC from the 2015 Decision without giving Plaintiff's 2016 application fresh review, as required by *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018); and (2) ALJ Grit erred by failing to follow the treating physician rule in evaluating the opinions of both Plaintiff's treating psychologist, Eric Sauer, Ph.D., and his treating psychiatrist, Denise Gribbin, M.D. On March 16, 2021, Magistrate Judge Kent issued an opinion concluding that ALJ Grit failed to comply with *Earley* by not giving Plaintiff's application a fresh review, but properly complied with the treating physician rule. Accordingly, Magistrate Judge Kent remanded the matter to the Commissioner to re-evaluate Plaintiff's RFC during the relevant time period. *See Sandusky v. Comm'r of Soc. Sec.*, No. 19-cv-967, 2021 WL 972805 (WD. Mich. Mar. 16, 2021).

On July 8, 2021, the Appeals Council vacated ALJ Grit's December 31, 2018 decision and remanded the case for further proceedings. Because Plaintiff had filed a subsequent application for

3

Supplemental Security Income benefits on December 3, 2019, in which he alleged disability also due to prostate cancer and insomnia, the Appeals Council instructed the ALJ to consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims. (PageID.720–22.) On October 6, 2021, ALJ Grit held a hearing by telephone and received testimony from Plaintiff and Susan Rowe, an impartial vocational expert. (PageID.643–75.) On October 25, 2021, ALJ Grit issued a partially favorable written decision finding that Plaintiff was not disabled prior to December 2, 2019, but became disabled on that date and continued to be disabled through the date of the decision. (PageID.614–34.)

Plaintiff initiated this civil action for judicial review on December 29, 2021.[1]

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations set forth a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[1] It appears that Plaintiff did not request that the Appeals Council review ALJ Grit's decision. The record does not contain an Appeals Council denial, and the parties do not mention it in their briefs.

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2016, for purposes of his DIB claim, and had not engaged in substantial gainful activity since his alleged onset date of November 9, 2015, the ALJ found that Plaintiff suffered from severe impairments of anxiety disorder; panic disorder without agoraphobia; depression; personality disorder; and explosive disorder. The ALJ also found that as of December 2, 2019, Plaintiff also suffered from the additional severe impairments of prostate cancer and osteoporosis. (PageID.618.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ considered

5

listings 1.18 and 13.24 for Plaintiff's osteoporosis and prostate cancer and listing 12.04 for his mental impairments. (PageID.619.) Regarding the "paragraph B" criteria of listing 12.04, the ALJ found that Plaintiff was mildly limited in the areas of understanding, remembering, or applying information and in adapting or managing oneself, and moderately limited in the areas of interacting with others and concentrating, persisting, or maintaining pace. (PageID.620.)

The ALJ found that prior to December 2, 2019, Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [H]e must have no interaction with the public. He may have only occasional interaction with supervisors and coworkers. He is able to understand, remember, and perform simple tasks. He is able to make simple work-related decisions and adapt to routine changes in the workplace.

(PageID.621.) The ALJ further found that beginning on December 2, 2019, and continuing through the date of the decision, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [H]e can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs. He must have no interaction with the public. He may have only occasional interaction with supervisors and coworkers. He is able to understand, remember, and perform simple tasks. He is able to make simple work-related decisions and adapt to routine changes in the workplace.

(PageID.629.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a polishing machine operator helper as generally performed prior to December 2, 2019, but that after that date Plaintiff's RFC precluded him from performing that work. (PageID.631–32.).) At step five, the ALJ determined that since December 2, 2019, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. (PageID.633.) Therefore, the ALJ found Plaintiff not disabled prior to December 2, 2019, but disabled after that date through the date of decision. (*Id.*)

## **DISCUSSION**

Plaintiff raises two issues in his appeal: (1) the ALJ committed reversible error by presiding over Plaintiff's latest hearing because the ALJ was not properly appointed under the Appointments Clause; and (2) the ALJ committed reversible error by failing to follow the treating physician rule. (ECF No. 12 at PageID.1266.)

**I.     ALJ Appointment**

Invoking *Lucia v. Securities and Exchange Commission,* 585 U.S. —, 138 S. Ct. 2044 (2018), and *Carr v. Saul*, 593 U.S. —, 141 S. Ct. 1352 (2021), Plaintiff contends that remand is warranted because ALJ Grit improperly presided over the October 2021 hearing on Plaintiff's 2016 and 2019 applications. In *Lucia*, the Supreme Court held that ALJs employed by the Securities and Exchange Commission (SEC) were "Officers of the United States," and therefore were required to be appointed in accordance with the Appointments Clause of the United States Constitution—by the President, Courts of Law, or Heads of Departments. 138 S. Ct. at 2049–55. Because SEC ALJs were appointed by lower-level SEC employees and not in accordance with the Appointments Clause, they lacked authority to perform their assigned tasks. *Id.* at 2055. Having reached that conclusion, the Court held that the proper remedial outcome was that the original ALJ could not preside over the matter, even if he had received "a constitutional appointment," because he had already "heard [the] case and issued an initial decision on the merits . . . [and could not] be expected to consider the matter as though he had not adjudicated it before." *Id.* (footnote omitted). Thus, another ALJ was required to conduct the new hearing.

Following the decision in *Lucia*, the Acting Commissioner of Social Security ratified the appointments of ALJs on July 16, 2018. SSR 19-1p ("Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council"), 2019 WL 1324866. In *Carr*, decided after the ratification, the Court held that because Social

7

Security proceedings are not adversarial in nature, a claimant who does not raise an Appointments Clause challenge before the agency is not precluded from raising it for the first time in federal court. 141 S. Ct. at 1362.

Although ALJ Grit had been properly appointed at the time she presided over both the November 2, 2018 and the October 6, 2021 hearings, Plaintiff contends that an Appointments Clause issue is present because ALJ Grit presided over the July 30, 2015 hearing, while she had not been properly appointed. As relevant authority, Plaintiff cites *Welch v. Commissioner of Social Security*, No. 2:20-cv-1795, 2021 WL 1884062 (S.D. Ohio May 11, 2021), *report and recommendation adopted*, 2021 WL 2142805 (S.D. Ohio May 26, 2021), in which the court concluded that the plaintiff was entitled to a new hearing before a new ALJ.

The circumstances in *Welch*, however, are distinguishable from those here. In *Welch*, an ALJ who had not been properly appointed held a hearing in 2016, which resulted in a federal court appeal in 2018. After the parties stipulated to a remand, and in spite of the plaintiff's objections, the same ALJ conducted the second hearing and again issued an unfavorable decision. *Id.* at *1–2. Applying *Lucia*, the court found that the plaintiff was entitled to a new hearing because the ALJ who presided over both the first and second hearing had not been properly appointed at the time of the first hearing. In other words, the ratification in the interim did not remove the taint of the first hearing. *Id.* at *5. In contrast, ALJ Grit had been properly appointed for both hearings over Plaintiff's present claim. Plaintiff's entire argument hinges on the July 2015 hearing, but that hearing involved a different claim for a different period that Plaintiff did not appeal. Plaintiff is challenging the 2021 decision, not the 2015 decision.

These circumstances more closely resemble those in *Lisa W. v. Kijakazi*, No. 2:20-cv-590, 2021 WL 6101825 (E.D. Va. Sept. 28, 2021), *report and recommendation adopted*, 2021 WL

8

5412585 (E.D. Va. Nov. 19, 2021), which also involved a prior decision by an improperly appointed ALJ that became final without judicial review. The court noted that the plaintiff was not challenging the prior decision, which had become final and binding.[3] *Id.* at *11. It also observed that *Carr* excuses exhaustion *only* in the same case, not in prior cases in which Appointments Clause challenges could have been, but were not, asserted. Thus, the court found that the plaintiff's challenge was, in effect, an improper collateral attack on a separate decision that had become final, rather than a proper challenge under *Lucia*. *Id.*; *see also Hughes v. Kijakazi*, No. 5:21-905, 2022 WL 3714627, at *16 (D.S.C. Aug. 29, 2022) ("Plaintiff's October 14, 2015 ALJ decision is not the subject of the instant appeal. Plaintiff in no way disputes the constitutionality of ALJ Jordan's appointment. Plaintiff cannot collaterally attack the 2015 ALJ decision at this point." (citing L*isa W.*)).

Because *Lucia* does not require remand, this ground is rejected.

## II.    Treating Physician Rule

Plaintiff also contends that the ALJ failed to properly apply the treating physician rule in evaluating the opinions of his treating psychologist, Eric Sauer, Ph.D. Because Plaintiff filed his DIB application prior to March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1527. (PageID.621.) *See Crawford v. Comm'r of Soc. Sec.*, No. 2:21-cv-726, 2022 WL 219864, at *1 n.1 (S.D. Ohio Jan. 25, 2022).

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

---

[3] The Court notes that, unlike his prior appeal, Plaintiff does not argue here that the ALJ failed to give his present application fresh review as required by *Earley*.

9

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency

10

of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Dr. Sauer provided several opinions in support of Plaintiff's claim, which the ALJ summarized as follows:

> The opinions of the claimant's therapist, Eric Sauer, Ph.D., are given partial weight but not controlling weight. Between October 13, 2015, and October 25, 2016, Dr. Sauer articulated several opinions concerning the claimant's functional impairments (Ex. B3F and B6F). Dr. Sauer opined that the claimant had functional impairments concerning finances, family, interpersonal relationships, and physical health (*Id.*). In June 2018, Dr. Sauer also completed a medical source statement indicating that the claimant's limitations existed since June 2013 (Ex. B12F). He specifically opined that the claimant had extreme limitations in the following areas of functioning: relating to co-workers; dealing with the public; interacting with supervisors; dealing with work stresses; maintaining attention and/or concentration; behaving in an emotionally stable manner; working in coordination with or proximity to others without being distracted by them; getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods (*Id.*). Furthermore, Dr. Sauer opined that the claimant had marked limitations in maintaining social functioning (*Id.*). Dr. Sauer opined that the claimant had moderate limitations in performing activities of daily living; maintaining concentration, persistence, or pace; and performing activities within a schedule, maintaining regular attendance, and being punctual within customary allowances (*Id.*). Dr. Sauer documented that the claimant had either no limitations or mild limitations regarding simple job instructions (*Id.*). On March 25, 2019, Dr. Sauer opined that the claimant would have ongoing problems with coworkers, supervisors, and bosses (Ex. B19F). He would need to leave work quickly (and with little notice) to avoid acting on his angry thoughts or to deal with overwhelming panic symptoms (*Id.*). Due to ongoing psychological concerns, the claimant would not be able to sustain any type of work on a sustained basis (*Id.*). He would have great difficulty adapting to any changes in the workplace (*Id.*). Lastly, on September 30, 2021, Dr. Sauer opined that the claimant's ability to interact with others would be problematic, specifically concerning maintaining peace (Ex. B31F/6). He opined that the claimant satisfied

11

> the "paragraph C" criteria but also stated that the claimant's mental functioning has not changed since 2013 (*Id.*at 7).

(PageID.627–28.)

The ALJ explained the weight she gave to these opinions as follows:

> Dr. Sauer's opinions are given some weight since he treated the claimant for approximately one year (Ex. B3F and B6F). In addition, his opinions merit more weight because the moderate limitations in concentration, persistence, and maintenance of pace along with mild limitations in performing simple tasks were supported by the claimant's intelligence test results (Ex. B1F/4) and mental status examination findings (Ex. B3F/1-2, 4-12, and 14-18). However, Dr. Sauer's opinions are given less weight because many of the opinions provided were vague. The opinions consisted largely of a check mark without an accompanying explanation of why the claimant experienced a functional impairment in a particular area. The examiner also did not articulate the extent of the functional impairment alleged in Exhibits B3F and B6F. In addition, Dr. Sauer's opinions are given less weight due to inconsistencies with the record and internal inconsistencies. For instance, the social limitations given were inconsistent with the prior decision or the medical evidence of record. The claimant demonstrated a pleasant mood with good eye contact during several examinations (Ex. B8F/7, 17, B9F/5, B15F/5, B17F/1, 27, and B23F/23). Although the claimant dealt with depression, irritability, and anxiety (Ex. B2F/2, 6, 12, and B3F/2), he also exhibited normal mental status examination findings, such as pleasant mood, normal mood and affect, normal behavior, normal thought processes, normal thought content, intact judgment, and no cognitive deficiencies (Ex. B8F/7, 17, B9F/5, B15F/5, 13, 21, B16F/3, B21F/9, 18, 24, B22F/18, 24-25, B23F/43, and 47). Furthermore, Dr. Sauer simultaneously opined that the claimant had extreme limitations in attention and concentration and also only moderate limitations in maintaining concentration, persistence, or pace. Dr. Sauer simultaneously opined that the claimant had extreme limitations in completing a normal workday without interruptions from psychological symptoms but also opined that the claimant had only moderate limitations in performing activities within a schedule and extreme limitations on dealing with the public. Therefore, Dr. Sauer's opinions are given partial weight but not controlling weight.

(PageID.628.)

Plaintiff contends that the ALJ's decision failed to comport with the treating physician rule because she relied upon checkmark forms from non-examining psychologists while stating that the same types of forms from treating sources are not acceptable. Next, Plaintiff contends that the ALJ's citation of isolated treatment notes to the exclusion of the findings of his treating psychologists is not a valid reason to discount Dr. Sauer's opinions. Finally, Plaintiff contends that

12

the ALJ should have credited Dr. Sauer's opinions over those of the non-examining State agency psychological consultants based on his treatment of Plaintiff for seven years. (ECF No. 12 at PageID.1268–69.)

The Court concludes that the ALJ properly evaluated Dr. Sauer's opinions and gave good reasons for declining to give them controlling weight. First, regarding the functional limitations set forth in Dr. Sauer's progress notes from 2015 through April of 2017 (PageID.364–82, 448–76), the ALJ correctly noted that those assessments consisted simply of checkmarks without any accompanying explanation as to the extent or nature of the limitations. The Sixth Circuit has stated that ALJs are not bound by conclusory statements of doctors on check-box forms without supporting explanations. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]"). Although Plaintiff contends that the ALJ relied on similar checkmark forms without explanation in crediting opinions from non-examining psychologists, he fails to cite them.

The ALJ also found that Dr. Sauer's opinions were inconsistent in several respects. First, she found portions of Dr. Sauer's June 11, 2018 medical source statement internally inconsistent, noting that his opinion that Plaintiff had extreme limitations in maintaining attention and/or concentration conflicted with his opinion that Plaintiff was moderately limited in maintaining concentration, persistence, or pace and that his opinion that Plaintiff had extreme limitations in completing a normal workday and workweek without interruptions from psychological symptoms conflicted with his opinion that Plaintiff was only moderately limited in performing activities within a schedule. (PageID.555–56.) This was a valid reason for discounting Dr. Sauer's opinions.

13

*See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) ("Further, the ALJ also determined that Deters's opinion was internally inconsistent, which is an independent reason for granting it little weight."); *Owens v. Comm'r of Soc. Sec.*, No. 1:12-cv-209, 2013 WL 1912868, at *12 (E.D. Tenn. Apr. 5, 2013) (finding ALJ identified proper bases for discounting a treating physician's opinion as internally inconsistent where, among other things, "the categories of marked and extreme limitations did not make sense when compared to the categories in which Dr. Johnson opined Plaintiff had no significant impairment"). In addition, the ALJ found Dr. Sauer's opinions inconsistent with several normal mental status examination findings that included pleasant mood, normal mood and affect, intact judgment, and no cognitive deficits. (PageID.486, 496, 524, 572, 580, 588, 595, 998, 1007, 1013, 1065, 1070–71, 1125, 1129.) While Plaintiff contends that these findings were insubstantial, they were not isolated instances and provide substantial evidence for the ALJ's findings. In any event, the ALJ cited other good reasons for giving Dr. Sauer's opinions less than controlling weight.[4]

      Finally, the ALJ did not totally reject Dr. Sauer's opinions, but instead gave them "some weight," crediting his opinions of moderate limitations in concentration, persistence, and pace and mild limitations in performing simple tasks, as supported by intelligence test results. (PageID.628.) As Plaintiff notes, the ALJ said that Dr. Sauer had treated Plaintiff for approximately one year, when, in fact, he had treated Plaintiff for about seven years, since 2013. (ECF No. 12 at

---

[4] The ALJ also noted that the social limitations Dr. Sauer identified were inconsistent with the limitations from the RFC from the prior case. Plaintiff does not address this issue or explain why this was not a proper reason for discounting Dr. Sauer's opinions. Indeed, in *Earley*, the Sixth Circuit expressly acknowledged that an ALJ properly may "take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." 893 F.3d at 933. In this regard, Dr. Sauer testified that Plaintiff's level of disability or impairment has remained at the same level since 2013. (PageID.1215.)

PageID.1267.) It is not clear whether the ALJ overlooked or misstated the actual length of Dr. Sauer's treating relationship or instead was simply observing that he treated Plaintiff during the relevant time period (2015 and 2016). The ALJ's discussion suggests that she was aware that Dr. Sauer had treated Plaintiff for more than just one year, as she cited his statement that Plaintiff's limitations had existed since 2013 and discussed his later opinions. Regardless, the decision clearly reveals that the ALJ cited the one year of treatment as a reason to give more weight to Dr. Sauer's opinions, and nothing in her discussion suggests that she would have assigned his opinions any greater weight based on the actual length of the treating relationship.

Accordingly, this claim of error is rejected.

## **CONCLUSION**

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: October 18, 2022                   /s/ Sally J. Berens
                                                                                 SALLY J. BERENS
                                                                                 U.S. Magistrate Judge